```
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF INDIANA
                         HAMMOND DIVISION

                                  )
STACIE GRANGER,                   )
                                  )
          Plaintiff,              )
                                  )
     v.                           )   Case No. 2:04 CV 8
                                  )
FRANK A. McBRIDE and SOUTHLAKE    )
COMMUNITY MENTAL HEALTH CENTER,   )
INC. d/b/a SOUTHLAKE CENTER       )
FOR MENTAL HEALTH,                )
                                  )
          Defendants              )
```

OPINION AND ORDER

This matter is before the court on the Motion to Reconsider Discovery Order and Motion for Protective Order filed by the defendant, Southlake Community Mental Health Center, on March 13, 2006 and the Verified Motion to Reconsider and Clarify Discovery Order and Protective Order filed by Southlake on March 20, 2006. For the reasons set forth below, these motions are **GRANTED IN PART** and **DENIED IN PART**.

Background

In this §1983 case, Stacie Granger alleges that Frank McBride, a therapist at Southlake Community Mental Health Center, sexually assaulted and battered her while under Southlake's care. On February 21, 2006, Granger and another plaintiff, who since has been dismissed from this case, sought the names, phone numbers, medical records, and investigation documents relating to several other Southlake patients who previously had reported sexual misconduct by McBride. The sole basis on which Southlake objected to the production of these records was that they were

covered by the Health Insurance Portability and Accountability Act ("HIPAA").

On March 9, 2006, this court held that HIPAA did not foreclose access to the information sought and ordered its production pursuant to a protective order.  Four days later, Southlake filed its first motion for reconsideration, arguing for the first time that the production of nonparty records violates the federal psychotherapist-patient privilege. A week after that, Southlake filed a second motion for reconsideration, asserting more arguments not raised in the first round of briefing.  Specifically, the second motion argues that the court must follow the procedures set forth by section 290dd-2 of the Alcohol, Drug Abuse, and Mental Health Administration Act ("Health Act"), 42 U.S.C. §§ 290aa-290ff, and accompanying regulations before releasing the non-party patient information.  It also makes additional claims of attorney-client and work-product privileges. The reply brief with respect to these motions raises yet more arguments related to the discovery procedure.

## Discussion

Although they are frequently filed, the Court of Appeals has described a motion for reconsideration as "a motion that, strictly speaking, does not exist under the Federal Rules of Civil Procedure." *Hope v. United States*, 43 F.3d 1140, 1142 n.2 (7th Cir. 1994).  *See also* ***Talano v. Northwestern Medical Faculty Foundation, Inc.***, 273 F.3d 757, 760 n.1 (7th Cir. 2001). This type of motion "is a request that the [Court] reexamine its

decision in light of additional legal arguments, a change of law, or perhaps an argument or aspect of the case which was overlooked." **Ahmed v. Ashcroft**, 388 F.3d 247, 249 (7th Cir. 2004) (internal quotation omitted). In **Frietsch v. Refco, Inc.**, 56 F.3d 825 (7th Cir. 1995), the Court of Appeals did not question the availability of a motion to reconsider but stated:

> It is not the purpose of allowing motions for reconsideration to enable a party to complete presenting his case after the court has ruled against him. Were such a procedure to be countenanced, some lawsuits really might never end, rather than just seeming endless.
>
> 56 F.3d at 828

See also **Oto v. Metropolitan Life Insurance Company,** 224 F.3d 601, 606 (7th Cir. 2000)("A party may not use a motion for reconsideration to introduce new evidence that could have been presented earlier."); **Divane v. Krull Electric Company**, 194 F.3d 845, 850 (7th Cir. 1999); **LB Credit Corporation v. Resolution Trust Corporation**, 49 F.3d 1263, 1267 (7th Cir. 1995). Ultimately, a motion for reconsideration is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." **Global View Ltd. Venture Capital v. Great Central Basin Exploration**, 288 F.Supp.2d 482, 483 (S.D.N.Y. 2003)(internal quotation omitted).

It is firmly established that an argument raised for the first time in a reply brief is waived. See **United States v. Kelley**, ___ F.3d. ___, 2006 WL 1149187, at *4 (7th Cir. May 2, 2006); **Pugel v. Board of Trustees of the University of Illinois**, 378 F.3d 659, 669 (7th Cir. 2004). Likewise, the Federal Rules of

3

Civil Procedure contemplate that all of a nonmovant's defenses will be raised in that party's responding brief. *See* Rule 12(b)("Every defense, in law or fact, to a claim for relief in any pleading . . . shall be asserted in the responsive pleading thereto if one is required). Consistent with these principles, a motion to reconsider is not a "second bite of the apple" which a party may use to present arguments that were available in the first round of briefing. *See **Frietsch**,* 56 F.3d at 828.  Rather, reconsideration is within the sound discretion of the court and should be granted in only narrow circumstances, such as when the court's previous decision is based on an error of law. *See **Ty, Inc. v. Jones Group, Inc.***, 237 F.3d 891, 897 (7th Cir. 2001); ***United States v. Madoch***, 149 F.3d 596, 602 (7th Cir. 1998); ***Ramada Franchise Systems, Inc. v. Royal Vale Hospitality of Cincinnati, Inc***., No. 02 C 1941, 2004 WL 2966948, at *3 (N.D. Ill., Nov. 24, 2004).

First, Southlake argues that Granger never properly sought discovery of the information pertaining to previous investigations into McBride's conduct through a Request for Production. This argument, which was not raised in response to Granger's original motion or in the body of Southlake's two motions to reconsider, is waived. Southlake's suggestion that it could not assert all its defenses because it could not comprehend the full nature of Granger's request in the absence of a Request for Production must fail, given that Granger stated her request with specificity in her initial brief on the issue. *See* DE 36. In

4

addition, pursuant to the Health Act under which Southlake now seeks protection, Granger is required to seek a court order authorizing disclosure prior to obtaining information from patient records by any means. *See* 42 C.F.R. §2.61.  Therefore, the fact that Granger sought a court order prior to issuing a formal discovery request is not fatal.

Next, Southlake attempts to avoid waiver of its privilege arguments by claiming that Southlake limited its original response to the issue of HIPAA protection only because the plaintiff did so in her opening brief. Once again, Southlake had at least three opportunities to make this argument prior to filing a reply brief, and so it is waived. Furthermore, Granger explicitly stated in her first brief that Southlake's only objection to producing the information was under HIPAA, and Southlake never challenged this statement.  *See* DE 36 ¶ 7.

Southlake's assertion of the work-product privilege is untimely, and thus waived.[1] *See* **Griffin v. Summerlin**, 78 F.3d 1227, 1231 (7th Cir. 1996). Not only did Southlake fail to assert this privilege in response to any of the plaintiff's Requests for Production (including those that could be construed to encompass the information Granger now seeks) and to Granger's original motion, but Southlake also waited until its second motion for

---

[1] As a practical matter, the work-product and attorney-client privileges likely do not apply to patient files in the context of this litigation. Patient treatment records, as commonly understood, are not created in anticipation of litigation nor would they contain information that would reflect attorney-client communication.  Therefore, Southlake could assert these privileges only with respect to documents maintained independently of the patient files.

5

reconsideration to seek court protection on this ground. Moreover, Southlake failed to provide a privilege log as required by Rule 26(b)(5). *See* **Hobley v. Burge**, 433 F.3d 946, 947-48 (7th Cir. 2006)("An attorney asserting privilege must timely support that claim with a 'privilege log' which describes the nature of each document being withheld."); **Ritacca v. Abbot Laboratories**, 203 F.R.D. 332, 336 (N.D. Ill. 2001)(noting that failure to produce a privilege log is grounds for waiver).

Southlake's arguments with respect to the attorney-client privilege fail for the same reason. While Southlake did assert this privilege in response to the Requests for Production, Southlake has taken the position that the Requests did not include the information Granger now seeks. Regardless, Southlake did not claim this privilege until the second motion to reconsider and has not provided a privilege log.

In sum, to the extent not already produced, Southlake must provide all documents pertaining to the investigation and disposition of Granger's complaint regarding McBride, as well as the investigation and disposition of other complaints regarding sexual misconduct by McBride that are not contained in the nonparty patient records. In addition to falling outside the scope of the Health Act because they are not patient records, these documents have nothing whatsoever to do with the substance abuse diagnosis, treatment, or referral of Granger or McBride's other accusers under the Health Act.  *See* 42 C.F.R. §2.12(a). Southlake may refer to the nonparty accusers as Jane Does and

6

temporarily redact all non-party identifying information pending resolution of the notification process set forth by 42 C.F.R. § 2.64 and discussed below. Southlake also may redact any reference to diagnosis, treatment, or referral of both Granger and the nonparties that may appear in these documents.  Aside from its exclusion under the Health Act, the plaintiff expressly declines any need for this information.

Turning next to the nonparty patient records, Granger voluntarily has limited the scope of her discovery request to "statements, evidence, or other information regarding accusations against McBride" contained in the patient records, provided that Southlake supplies a privilege log for the retained or redacted material. *See* Response Brief, p. 11. Southlake maintains that the federal psychotherapist-patient privilege bars the production of even these references, despite acknowledging that Southlake shared the allegations with its counsel and insurance carrier. *See* Second Motion for Reconsideration, pp. 5-6.

Assuming that the psychotherapist-patient privilege applies to substance abuse counseling records, the privilege "must give way . . . if a serious threat of harm to the patient or to others can be averted only by means of a disclosure by the therapist." **Jaffee v. Redmond**, 518 U.S. 1, 18 n.9, 116 S.Ct. 1923, 1932 n.9, 135 L.Ed.2d 337 (1996). *See also* **Finley v. Johnson Oil Company**, 199 F.R.D. 301, 302-03 (S.D. Ind. 2001). Furthermore, courts considering the psychotherapist privilege consider waiver to have occurred if the communications are shared with a party beyond the

therapist, his employer, and his client. *See, e.g.,* ***Jaffee***, 518 U.S. at 18 n.9, 116 S.Ct. at 1932 n.9 (considering waiver to have occurred if disclosure is made *"by the therapist"*)(emphasis added); ***Beard v. City of Chicago***, No. 03 C 3527, 2005 WL 66074, at *7 (N.D. Ill. Jan. 10, 2005); ***Boudreau v. Ryan***, No. 00 C 5392, 2001 WL 1001156, at *3-4 (N.D. Ill. Aug. 24, 2001). Thus, the privilege does not extend, as the attorney-client and work product privileges sometimes do, to communications made with an insurance carrier. *See, e.g.,* ***Goh v. CRE Aquisition***, No. 02 C 4838, 2004 WL 765238, at *1-2 (N.D. Ill. April 6, 2004). This distinction makes sense: whereas an attorney, client, and insurance carrier often must work together to investigate fully a client's legal concern, neither an attorney nor an insurance carrier has any role in the treatment relationship between therapist and patient.

Here, allegations of sexual misconduct by an adult counselor towards his clients, some or all of whom were minors and in the vulnerable position of dealing with substance addiction, is precisely the type of serious threat or harm contemplated by the ***Jaffee*** court that would warrant vitiating the psychotherapist privilege. And accordingly, Southlake appropriately waived the psychotherapist-patient privilege when it communicated the complaints of sexual abuse to its attorneys and insurance carrier. For these reasons, the privilege does not bar the plaintiff's discovery of information in patient records concerning these allegations.

However, the Health Act, as interpreted by the Seventh Circuit, sets forth a procedural bar to the immediate release of this information. *See* 42 U.S.C. §290dd-2(b)(2)(C); *United States v. Cook County, Illinois*, 277 F.3d 969, 981-83 (7th Cir. 2002), *aff'd*, 538 U.S. 119, 123 S.Ct. 1239, 155 L.Ed.2d 247 (2003).  The Health Act governs the production of

> [r]ecords of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any program or activity relating to substance abuse education, prevention, training, treatment, rehabilitation, or research, which is conducted, regulated, or directly or indirectly assisted by any department or agency of the United States. . . .

42 U.S.C. §290dd-2(a).

It is undisputed that Southlake must comply with this Act. In addition, it does not appear that protection under the Act can be waived, despite Southlake's initial failure to raise the Act as a defense to production. *See* 42 C.F.R. §2.13(b).

The Health Act allows production of patient records, among other exceptions, if authorized by order of court, "granted after application showing good cause therefor, including the need to avert a substantial risk of death or serious bodily harm." *See* § 290dd-2(b)(2)(C). In determining whether good cause is shown, the statute provides that "the court shall weigh the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the treatment services." §290dd-2(b)(2)(C).  Finally, the court must impose safe-

9

guards against disclosure commensurate with the extent to which disclosure is necessary. *See* §290dd-2(b)(2)(C).

The regulations interpreting the Health Act "divide information into two categories - confidential and nonconfidential communications." *Cook County*, 277 F.3d at 982.  Confidential communications are "communications made by a patient to a program in the course of diagnosis, treatment, or referral for treatment . . . ." 42 C.F.R. §2.63(a). Nonconfidential communications are the "[o]rdinary, run-of-the-mill objective data" concerning a patient's treatment in a program. *See In re The August, 1993 Regular Grand Jury (Hospital Subpoena)*, 854 F.Supp. 1380, 1384 (S.D. Ind. 1993).

With both types of information, the patient whose information will be disclosed must be provided with "[a]dequate notice in a manner which will not disclose patient identifying information to other persons" and an "opportunity to file a written response to the application, or to appear in person, for the limited purpose of providing evidence on the statutory and regulatory criteria for the issuance of the court order." 42 C.F.R. §2.64(b). *See also Cook County*, 277 F.3d at 982.

Once notice has been given, the court next must determine whether good cause is shown by finding that "(1) other ways of obtaining the information are not available or would not be effective; and (2) the public interest and need for disclosure outweigh the potential injury to the patient, the physician-patient relationship and the treatment services." *Cook County*,

277 F.3d at 982-83 (*quoting* 42 C.F.R. §2.64(d)). If this test is met, the court may order disclosure of nonconfidential information, with or without patient consent.  See **Hospital Subpoena**, 854 F.Supp. at 1384.  However, to disclose *confidential* communications in the absence of patient consent, the court must further consider if, among other circumstances, "the disclosure is necessary in connection with investigation or prosecution of an extremely serious crime, such as one which directly threatens loss of life or serious bodily injury, including . . . rape." *See* 42 C.F.R. §2.63(a). If this condition is satisfied, then confidential communications also may be disclosed. *See* **Hospital Subpoena**, 854 F.Supp. at 1384.

Granger seeks patient identifying information including names and last known addresses and phone numbers, as well as statements made within the patient treatment files, that would refer to allegations of sexual misconduct by McBride. The first type of information plainly is the sort of objective data that must satisfy only the good cause test to be disclosed.  The second category of information more closely falls under the definition of confidential communications, thereby necessitating further analysis under 42 C.F.R. §2.63(a). Despite the fact that notice has not yet been given to the nonparties effected by disclosure, the court will evaluate whether good cause exists for the sake of judicial economy.

Granger has no alternative means of obtaining the confidential or nonconfidential information.  Southlake is the only party

11

that has knowledge of the identities of McBride's other accusers. McBride's supervisor during the time in question has died.  Even if she still were alive, she could not share the requested information without running into Health Act concerns because the Act defines protected communications so broadly. *See* 42 C.F.R. §2.11. Therefore, the court is satisfied that Granger has no other way of obtaining the information and need not consider whether other means of discovery are effective.

The public interest and need for disclosure also easily outweigh any potential injury to the patient, the physician-patient relationship, and treatment services. Granger only is seeking those portions of the patient records that address the allegations of sexual abuse by McBride. She is not seeking to pry into the nonpatient substantive treatment records beyond this narrow category of information.  Moreover, the information she seeks has a heavy presumption in favor of public disclosure due to the nature of McBride's alleged acts. Even the most stringent test for disclosure set forth for confidential information under 42 C.F.R. §2.63(a) is satisfied because Granger has accused McBride of rape and is attempting to investigate his other alleged acts involving serious threat of bodily injury towards patients.  In this context, notice to the nonparties becomes a formality because the good cause to disclose the requested information is so clear.

Nevertheless, notice must be provided to the nonparties prior to the disclosure of any information contained in their

patient files.  *See* **Cook County**, 277 F.3d at 982. Therefore, the plaintiff shall draft the form of notice consistent with 42 C.F.R. §2.31. The defendant shall serve this draft notice on all nonparty former and current clients who have made accusations of sexual misconduct by McBride, with 30 days to respond in writing. A failure to respond will be considered failure to consent to disclosure. At the expiration of the 30 days, this court authorizes the disclosure of nonparty patient identifying information and any documentation contained in the patient records concerning allegations of misconduct by McBride pursuant to the good cause analysis contained in the body of this opinion.

To summarize, the attorney-client, work product, and psychotherapist-patient privileges have been waived.  Southlake shall produce all documents pertaining to the investigation and disposition of Granger's and other patients' complaints regarding sexual misconduct by McBride that are <u>not</u> contained in the nonparty patient records without further delay.  The disclosure of these documents shall be made consistent with the guidelines set forth in this opinion. *See* pp. 6-7. Southlake shall not disclose patient names or identifying information, or any documents regarding the allegations made which <u>are</u> contained in nonparty patient records until notice has been given to the nonparties and a 30 day response time has passed. At the close of the response time, Southlake shall disclose this information consistent with the March 9, 2006 protective order as amended below.

13

_____

For the foregoing reasons, the Motion to Reconsider Discovery Order and Motion for Protective Order filed by the defendant, Southlake Community Mental Health Center, on March 13, 2006, is **GRANTED IN PART** and **DENIED IN PART** and the Verified Motion to Reconsider and Clarify Discovery Order and Protective Order filed by Southlake on March 20, 2006, is **GRANTED IN PART** and **DENIED IN PART**. The protective order entered by this court on March 9, 2006 is hereby **AMENDED** as follows.

1. Paragraph (b) shall now state:

    b. Produce any and all documents regarding the allegations made, including statements provided, any documents produced as part of any investigation of such allegation, and the accuser's medical record only to the extent it contains statements, evidence, or other information regarding accusations against McBride.

2. Southlake shall contemporaneously provide a privilege log indicating which records have been retained or redacted, consistent with this Order.

ENTERED this 24th day of May, 2006


                                    s/ ANDREW P. RODOVICH
                                       United States Magistrate Judge